## BANCROFT v. BANCROFT.*

### No. 15,848; May 8, 1895.

#### 40 Pac. 488.

**Contracts—Menace.—A Contract for Sale of Stock, which** plaintiff owned and had pledged to a bank, was not obtained by "menace," within the definition of Civil Code, section 1570, "a threat of injury to the character," where defendant said that he would inform the bank that plaintiff was not the owner of the stock if plaintiff did not make the contract.

**Contract—Undue Influence.—Nor can the Contract be Said to** have Been obtained by undue influence, plaintiff being a mature man, in the possession of all his faculties, who for several years had been manager of the corporation in which were the shares, though defendant, who was the owner of the majority of the corporation's stock, and plaintiff's uncle, had been accustomed in a great measure to direct plaintiff's action, and was a tyranical and overbearing man.

APPEAL from Superior Court, City and County of San Francisco; J. M. Seawell, Judge.

Action by W. B. Bancroft against H. H. Bancroft for damages for inducing plaintiff to make a contract. A de-

*For subsequent opinion in bank, see 110 Cal. 374, 42 Pac. 896.

murrer was sustained to the complaint, and plaintiff appeals. Affirmed.

Mastick, Belcher & Mastick for appellant; E. J. McCutchen for respondent.

McFARLAND, J.—A demurrer to the amended complaint was sustained, and, plaintiff declining to further amend, judgment was rendered for defendant, from which plaintiff appeals. The complaint is substantially as follows: Defendant is the uncle of plaintiff, and ever since the latter's boyhood plaintiff was under the control and direction of defendant, and in his employ, and a part of the time resided with him. Defendant was accustomed in a great measure to guide and direct plaintiff's actions in business and other matters; was tyrannical and overbearing, and impatient of opposition; and thus had retained great influence over plaintiff, who was accustomed to rely upon and be guided by defendant in matters of business. Defendant owned much more than a majority of the stock of a certain corporation called the Bancroft Company, and entirely controlled and managed its affairs. Defendant was the president of said corporation, and plaintiff was employed as the manager of its business. In September, 1887, plaintiff became the owner of thirteen hundred and forty-five shares of the stock of said corporation, and continued to own the same until the thirteenth day of February, 1891. In November, 1890, plaintiff borrowed $3,500 from the People's Home Savings Bank, and as security therefor pledged to said bank said thirteen hundred and forty-five shares of stock. On February 12, 1891, defendant demanded of plaintiff that plaintiff should transfer and deliver to defendant the said thirteen hundred and forty-five shares of stock, and all his interest in the assets and property of said corporation, for the sum of $5,000, and then and there "informed plaintiff that unless he should forthwith transfer to him (defendant) the said stock and property on the terms aforesaid, he (defendant) would inform the said bank that plaintiff was not the owner of said stock, or any part thereof, and that plaintiff had pledged said stock without right or authority." He also said that he (defendant) would not pay more than $2,000 of said indebtedness of plaintiff to said bank, and would levy assessments on the

stock of said corporation to the extent of closing out its business. ''Thereupon plaintiff, solely through the influence possessed over him by defendant, and his habitual fear of defendant, and terrified by the threats aforesaid, and fully believing that defendant would carry said threats into execution, and would make to said bank and to others the statements so threatened, and that by reason of such statements plaintiff's character and reputation would be blasted and destroyed in the community in which he was residing and doing business, on the thirteenth day of February, 1891, acceded to said demand.'' Thereupon defendant directed plaintiff to deliver said stock to the said Bancroft Company, and to give to said company a bill of sale of all his interest in the property of said corporation, which plaintiff did on said day, ''solely for the reasons aforesaid.'' The said company paid said indebtedness to said bank, and paid the balance of the $5,000 to plaintiff. It is averred that ''plaintiff's consent to so transfer and deliver said stock to said corporation and to execute the bill of sale aforesaid was not freely given, but was obtained solely by the means aforesaid, and in consequence of the menace and the undue influence so exercised by defendant as aforesaid.'' Also, ''that, as plaintiff is informed and believes, the value of said 1,345 shares of stock on the said 13th day of February, 1891, was the sum of fifty thousand dollars, as was then well known to defendant, and plaintiff has been damaged by the wrongful acts of defendant as aforesaid in the sum of forty-five thousand dollars.'' It is also averred, upon information and belief, that after said transaction defendant so mismanaged the affairs of said corporation that ''the said shares of stock became and were at the commencement of this action greatly depreciated, and of little or no value.'' The prayer is for ''judgment against defendant for the sum of forty-five thousand dollars and for costs of suit.'' It does not appear when the action was commenced, but the present complaint was filed November 6, 1893, nineteen months after the alleged cause of action accrued.

The foregoing are the material averments of the complaint somewhat condensed. The demurrer was both general and special, and we think that it was properly sustained for a want of a statement of sufficient facts to constitute a cause

of action. The theory of the complaint is that plaintiff's consent to the said sale of the stock was not "free." The code provides that "an apparent consent is not real or free when obtained through (1) duress; (2) menace; (3) fraud; (4) undue influence; or (5) mistake": Civ. Code, sec. 1567. The averments of the complaint certainly do not show duress, fraud, or mistake. It is contended that they show "menace," because they show a threat of "injury to the character," under section 1570 of the Civil Code. The averment on this point is that defendant said he "would inform the bank that plaintiff was not the owner of said stock." But plaintiff, as the complaint shows, was the owner of the stock; and, this being so, it is impossible to conceive that a mere idle threat of defendant to say that plaintiff was not the owner was such an attack on his character as to overcome his free will. In an opinion delivered by the learned judge of the court below when sustaining the demurrer he says that the complaint does not show any ground for avoiding the sale through want of the free consent of plaintiff, unless that ground be undue influence; and that in such a case the remedy is rescission. Section 1566 of the Civil Code provides that "a consent which is not free is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by the chapter on rescission." Defendant contends that the remedy of rescission is only cumulative, and that in such a case a party, without rescinding, may maintain an action for damages under the general provision of section 3281. Nevertheless no case has been found, and counsel seem to admit that no case can be found, where a general action for damages has been maintained upon the ground of undue influence in procuring a contract. If such an action can be maintained, then the principle that a party must rescind promptly can be avoided. But we need not determine this point definitely, because in our opinion the facts averred do not make a case for either rescission or damages on the ground of undue influence. The complaint does not attribute to plaintiff either infancy or idiocy or any mental or moral imbecility. He was a mature man, in the possession of all his faculties, and for several years before the transaction complained of had been the general business manager of the Bancroft Company, with full and special opportunity to know its affairs and condition. And it is impossible to contemplate that under these circum-

stances he was induced by any facts, which he avers as constituting undue influence, to sell for $5,000 property which was worth $50,000.   The judgment is affirmed.

We concur: Henshaw, J.; Temple, J.